UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
:
NAGIBE AL-HAJ,                                         :
:
                          Plaintiff,                   :
:
             -v-                                       :
:
DR. SINGER, DR. SAKALEG, DR. KLEIN, NURSE              :
VINCENT, DR. CRISTINA MUSAT, AND SONTE                 :
TAYLOR,                                                :
:
                          Defendants.                  :
:
------------------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__9/28/2021__
```

19-cv-3135 (LJL)

ORDER AND

OPINION

LEWIS J. LIMAN, United States District Judge:

Defendants move, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), to dismiss Plaintiff's amended complaint.  Dkt. No. 53.  For the following reasons, Defendants' motion is granted.

## FACTUAL BACKGROUND

Plaintiff Nagibe Al-Haj ("Plaintiff" or "Al-Haj") is currently confined at Kirby Forensic Psychiatric Center ("Kirby").  He brings this action, pro se, pursuant to 42 U.S.C. § 1983, alleging that he is entitled to damages for violations of his constitutional rights.

The Court construes the pleadings of the pro se Plaintiff "generously and liberally," *Kadosh v. TRW, Inc.*, 1994 WL 681763, at *5 (S.D.N.Y. Dec. 5, 1994), according him "special solicitude," and interpreting the complaint "to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013).  "Because the plaintiff is proceeding pro se, the Court will consider the Original Complaint and the Amended Complaint together as the operative pleading." *See Little v. City of N.Y.*,  2014 WL 4783006, at *1 (S.D.N.Y. Sept. 25,

2014).

Plaintiff's Complaint and Amended Complaint, as the Court construes them, make two sets of allegations: the first against Dr. Cristina Musat ("Musat") and Sonte Taylor ("Taylor") for actions undertaken by them, and the second against Taylor for his knowledge of reports from Plaintiff of incidents with other patients.  Plaintiff complains that Musat and Taylor, among others, disrespected him due to his religion, had him repeatedly transferred between different wards of Kirby, and restricted his phone privileges, which left him unable to contact his attorney or the Justice Center, which is construed to mean the New York State Justice Center for Protection of People with Special Needs. Dkt. No. 34 at 6 n.7.  Plaintiff also alleges that Musat did not allow Plaintiff's brother and sister to visit him when he had his back surgery.  *Id.* Plaintiff claims that Taylor harassed and threatened him, and includes additional allegations attributed to Taylor that reads "cook times, eat pork."  Dkt. No. 1 at 5.

Plaintiff further alleges that Taylor witnessed or received reports of three incidents wherein Plaintiff alleged he had incidents with other patients.  Specifically, in the first incident Plaintiff alleges he was "with seninor taylor [sic] [b]eat up in my Back from patient."  Dkt. No. 14 at 4.  Plaintiff further alleges that a patient "was coming in side [sic] the shower with me and senior [know] about it."  *Id.*  Plaintiff writes that another patient was "jerking off when I was sleeping two times" and he "reported to mr. SHTA."  *Id.*  The Court construes references to SHTA and variations of "senior" to be referring to Taylor, as he is the only SHTA ("Secure Hospital Treatment Assistant") Defendant in this matter and repeatedly referred to as variations of "Senior Taylor."

In the original complaint, Plaintiff also names as Defendants Dr. Elliot Singer; Dr. Olga Sekulich; Laurie Klein, who is a Ph.D.; and Ezeora Vincent and Romy Rousseau, who are

nurses.  In the amended complaint, Plaintiff names as Defendants Dr. Olga Sekulich, Laurie

Klein, and Ezeora Vincent.  The New York State Office of the Attorney General ("OAG") made

identifications of these individuals in a June 29, 2020 letter based on the various identifiers listed

by Plaintiff.  Dkt. No. 17.  Plaintiff was directed to file a second amended complaint naming the

individuals pursuant to the identifications made by OAG, Dkt. No. 28, but Plaintiff has not done

so.

Plaintiff seeks damages for his injuries.

## PROCEDURAL BACKGROUND

Plaintiff filed his initial complaint against Kirby and the Defendants on April 8, 2019.

Dkt. No. 1.  On May 20, 2019, the Court dismissed the complaint without prejudice for

Plaintiff's failure to submit a completed request to proceed *in forma pauperis* or pay the $400 in

filing fees.  Dkt. No. 4.  Plaintiff appealed the decision on May 24, 2019.  Dkt. No. 5.  Plaintiff

filed a Notice of Appeal on June 18, 2019.  Dkt. No. 6.  By Order dated June 24, 2019, the Court

directed the Clerk of the Court to vacate the order of dismissal and the civil judgment and reopen

the action.  Dkt. No. 7.

By Order dated January 6, 2020, the Court granted Plaintiff's request to proceed without

prepayment of fees, in forma pauperis.  Dkt. No. 12.  On February 3, 2020, the Court granted the

Plaintiff leave to file an amended complaint within 30 days.  Dkt. No. 13.  On February 28, 2020,

the Plaintiff filed an Amended Complaint.  Dkt. No. 14.

On April 29, 2020, the Court ordered the Office of the Attorney General ("OAG") to

identify the individuals employed by Kirby referenced in the Plaintiff's complaint pursuant to

*Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997).  Dkt. No. 15.  The Order also directed Plaintiff

to file a second amended complaint naming the individuals identified by the OAG within 30 days

of receiving the information and ordered service on Defendants Musat and Taylor.  *Id.* at 2-3.

On June 29, 2020, the OAG identified the employees in response to the Court's order.  Dkt. No. 17.  On November 24, 2020, the OAG filed a letter with the Court requesting an extension for Defendants to answer once all defendants have been served.  Dkt. No. 26.  By order dated November 25, 2020, the Court again directed Plaintiff to file an amended complaint naming the individuals the OAG had identified.  Dkt. No. 28.

On February 18, 2021, the Court ordered OAG to respond with Defendants' answers 30 days from the date of service of the second amended complaint, and directed the Clerk of Court to send a copy of the April 29, 2020 and November 25, 2020 orders to Plaintiff.  Plaintiff did not file a second amended complaint naming those identified by OAG.

Defendants filed this motion to dismiss on February 25, 2021.  Dkt. No. 34.  Plaintiff did not submit a response to the motion to dismiss.

## LEGAL STANDARD

On a 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and draw all possible inferences from those allegations in favor of the plaintiff.  *See York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir.).  This requirement "is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  A complaint must offer more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action" or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007).  The ultimate question is whether "[a] claim has facial plausibility, [i.e.] the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556; *see also Matrixx v. Siracusano*, 563 U.S. 27, 46 (2011).

Although, as indicated, Plaintiff's complaint is to be "generously and liberally construed," *Kadosh v. TRW, Inc.*, 1994 WL 681763, at *5, a pro se plaintiff is nevertheless required to satisfy the same pleading requirements as a plaintiff proceeding with the aid of counsel.  A pro se plaintiff's "[b]ald assertions and conclusions of law are not adequate to withstand a motion to dismiss." *Ruotolo v. Fannie Mae*, 933 F. Supp. 2d 512, 524–25 (S.D.N.Y. 2013) (quoting *Wilson v. Dalene*, 699 F. Supp. 2d 534, 554 (E.D.N.Y. 2010)).  Furthermore, a court "cannot invent factual allegations that [the *pro se* plaintiff] has not pled." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

## DISCUSSION

Plaintiff raises two principal sets of allegations in his complaints.  First, Plaintiff alleges that Musat and Taylor "disrespected" him due to his religion, transferred him repeatedly from one ward to another, and that they restricted his phone privileges; he further alleges that Musat denied him a visit from his family, and that Taylor harassed and threatened him, and attributes an allegation reading "cook times, eat pork" to Taylor.  Dkt. No. 1 at 5.  Second, Plaintiff alleges that Taylor had knowledge of three incidents between the Plaintiff and other patients.  The Court addresses the two sets of allegations in turn.

### A.      Allegations against Musat and Taylor

Plaintiff's allegations against Musat and Taylor do not state a claim of constitutional deprivation.  First, many of the allegations against Musat and Taylor are conclusory and do not state a claim for relief.  Plaintiff's statement that he has been "disrespected" from "Docters[,] shta seinor tayler and patient," without further detail about what actions were undertaken by Musat and Taylor and how those actions impacted Plaintiff, does not have the requisite factual content to survive a motion to dismiss.  Dkt. No. 14 at 4; *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Plaintiff's allegations that Taylor "harassed" and "threatened" him similarly require additional factual content with respect to what Taylor did to harass or threaten Plaintiff to sufficiently plead a violation.  Dkt. No. 14 at 4.

Second, Plaintiff's allegation that Musat and Taylor transferred Plaintiff from one ward to another, even if done more than once, does not rise to the level of a constitutional violation. "Individuals involuntarily committed to state custody, . . . have constitutionally-protected liberty interests in . . . medical care[] and conditions of reasonable care and safety."  *Vallen v. Plan*, 2016 WL 482026, at *3 (E.D.N.Y. Feb. 4, 2016).  However, "decisions concerning the treatment of committed individuals should be 'made by medical professionals rather than a judge,' assuming adequate procedural safeguards exist," *Lewis v. Huebner*, 2020 WL 1244254, at *7 (S.D.N.Y. Mar. 16, 2020) (quoting *Washington v. Harper*, 494 U.S. 210, 231 (1990)), and such decisions of professionals are "presumptively valid."  *Youngberg v. Romeo*, 457 U.S. 307, 324 (1982.  Accordingly, "liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to

demonstrate that the person responsible actually did not base the decision on such a judgment." *Id*.

Plaintiff has not alleged facts to suggest that Musat and Taylor departed from ordinary professional judgment in transferring him from one ward to another. He states only that one of them transferred him to 2 East for no reason. Dkt. No. 14 at 4. The mere transfer of a patient from one ward to another, without more, does not constitute a constitutional violation. Plaintiff further alleges that "mr. SHTA . . . sent me to 4west to get injured." Plaintiff, however, does not allege facts to establish that Defendants transferred him for the purpose and with the intent that he be injured. Nor does he allege what injury occurred, who inflicted the injury, or any causal connection between the transfer and the injury. Even without an allegation of tangible injury as a result of the transfer, Plaintiff would still have to allege how the transfers implicated his constitutional rights, and that Musat or Taylor had a malicious reason for the transfer(s) or departed from accepted professional judgment in making them. *See Persico v. Gunnell*, 560 F. Supp. 1128, 1137 (S.D.N.Y. 1983) (granting motion to dismiss claim that multiple transfers between prison facilities constituted a violation of the Fifth, Eighth, and Ninth Amendments). Plaintiff has not done so, and so this claim cannot proceed.

Third, Plaintiff's allegation that Musat and Taylor restricted his use of the telephone so that he was unable to call his lawyer or the Justice Center also does not on its own state a claim of constitutional deprivation. "Prisoners, including pretrial detainees, 'have a constitutional right of access to the courts.'" *Bourdon v. Loughren*, 386 F.3d 88, 92 (2d Cir. 2004) (quoting *Bounds v. Smith*, 430 U.S. 817, 821 (1977)). In order to establish a constitutional violation, the plaintiff must "show that the defendant's conduct was deliberate and malicious, and that the defendant's actions resulted in actual injury to the plaintiff." *Collins v. Goord*, 581 F. Supp. 2d 563, 573

(S.D.N.Y. 2008) (citing *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003)).  "To show actual injury, the plaintiff must demonstrate that the defendant's conduct frustrated the plaintiff's efforts to pursue a nonfrivolous claim."  *Id.* (citing *Lewis v. Casey*, 518 U.S. 343, 353 (1996)).

In *Bounds v. Smith*, the Supreme Court held that this right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  *Bounds*, 430 U.S. at 828.  However, *Bounds* "did not create an abstract, freestanding right to . . . legal assistance."  *Lewis v. Casey*, 518 U.S. 343, 351 (1996).  Instead, "meaningful access to the courts is the touchstone," *Bounds*, 430 U.S. at 823, "and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim."  *Lewis*, 518 U.S. at 351.  The relevant inquiry is whether the inmate has "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts."  *Bounds*, 430 U.S. at 825.

Plaintiff's statement that his access to the phone was restricted and that he did not have access to his lawyer or thus Justice Center does not meet this standard.  A detainee does not have a right to unlimited telephone access.  *See Bellamy v. McMickens*, 692 F. Supp. 205, 214 (S.D.N.Y. 1988) ("Although prisoners have a right to access counsel from prison, they have no right to unlimited telephone calls.").  Further, "[p]hone restrictions do not impinge on a prisoner's constitutional rights where an inmate has alternate means of communicating with the outside world, and particularly with counsel."  *Henry v. Davis*, 2011 WL 3295986, at *2 (S.D.N.Y. Aug. 1, 2011).  Accordingly, a well-pleaded Section 1983 claim based on lack of telephone access would require an allegation that the inmate was "stripped of alternate means of communication."  *Edwards v. Horn*, 2012 WL 760172, at *5 (S.D.N.Y. Mar. 8, 2012).

Plaintiff's complaint alleges no more than that his telephone access was restricted.  The complaint does not contain an allegation that Plaintiff was stripped of alternative means of communication with counsel, nor does it allege that he was deprived of his right adequately to pursue his legal claims.  In the absence of such allegations, there has been no sufficient claim stated of a constitutional violation or a constitutional injury.

Fourth, Musat's denial of a visit from Plaintiff's siblings similarly does not rise to the level of a constitutional violation.  To establish a constitutional violation, Plaintiff must at a minimum allege facts to address each of the following four factors: "whether the regulation has a 'valid, rational connection' to a legitimate governmental interest; whether alternative means are open to inmates to exercise the asserted right; what impact an accommodation of the right would have on guards and inmates and prison resources; and whether there are 'ready alternatives' to the regulation." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (quoting *Turner v. Safley*, 482 U.S. 78, 89-91 (1987)).  There is no requirement that the alleged violations be repeated; "the intentional or malicious deprivation of visitation to a prisoner, even on one occasion, could rise to the level of a constitutional violation." *Mills v. Fischer*, 497 F. App'x 114, 116 (2d Cir. 2012). The Supreme Court has further held that "[t]he burden . . . is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." *Overton*, 539 U.S. at 132.

Plaintiff writes in his complaint that his brother and sister attempted to visit him when he was having "the surgery [in] Buffalo NY" and Dr. Musat "sen[t] them back." Dkt. No. 14 at 4. Plaintiff does not assert any malicious intent on the part of Dr. Musat or allege the proffered reason for the rejected visit.  Plaintiff also does not assert that this was a continuing problem or had occurred on any other occasion outside of the extraordinary circumstances of Plaintiff

undergoing surgery.  Without further factual allegations for any malicious intent in Musat's denial, there has been no sufficient claim stated of a constitutional violation or injury.

Lastly, Plaintiff's allegations that Musat and Taylor disrespected him because of his religion, and the allegation attributed to Taylor that reads "cook times, eat pork" similarly do not state constitutional violations.  In order to establish a prisoner has suffered a First Amendment violation of the free exercise clause, the plaintiff must demonstrate that they have a sincerely held religious belief, that a challenged policy or action constituted a substantial burden on the exercise of their religion, and that the challenged action was not reasonably related to legitimate penological interests.  *Holland v. Goord*, 758 F.3d 215, 220-23 (2d Cir. 2014).  Officials' non-accommodations of prisoners' religious dietary requirements without a reasonable justification for doing so have consistently been held to be constitutional violations.  *See Ford v. McGinnis*, 352 F.3d 582, 597 (2d Cir. 2003) (holding that prisoners have a "clearly established" right "to a diet consistent with [their] religious scruples"); *Brandon v. Kinter*, 938 F.3d 21, 35-36 (2d Cir. 2019) (holding that the denial of 10 pork-free meals to a Muslim prisoner can constitute a substantial burden to their religious exercise).

As stated above, the conclusory statement that Musat and Taylor "disrespected" Plaintiff because he is Muslim does not sufficiently plead a violation.  Dkt. No. 1 at 5; *see Chavis*, 618 F.3d at 170.  Plaintiff would have to specify acts undertaken by Musat or Taylor against him, and how they related to the exercise of his religion in order to sufficiently plead such a violation.  Similarly, the allegation attributed to Taylor that reads "cook times, eat pork" is not adequately specific to plead a violation.  While the two phrases are possibly suggestive of constitutional violations, Plaintiff would need to specify how his religious exercise was violated, and Taylor's involvement with that violation to survive a motion to dismiss.

**B.      Allegations of Inaction by Taylor**

Plaintiff fails to state a claim against Taylor for his knowledge of three incidents wherein Plaintiff alleges he was physically assaulted by another patient, another patient entered the shower with him, and another patient masturbated near him.  Plaintiff fails to state a claim by not alleging any direct connection between the incidents and Taylor.  "Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.

To be sure, "when a person is involuntarily held in state custody, and thus wholly dependent upon the state, the state takes on an affirmative duty to provide for his or her 'safety and general well-being.'"  *Charles v. Orange Cty.*, 925 F.3d 73, 82 (2d Cir. 2019) (quoting *Deshaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989)).  Civil detainees are entitled under the Due Process Clause of the Fourteenth Amendment.to at least those protections the Eighth Amendment accords to incarcerated individuals.  *See Romeo*, 457 U.S. at 321-22.  Thus, the Second Circuit has applied the same standard to assess alleged violations of the Eighth Amendment's prohibition of cruel and usual punishment for convicted prisoners, and the Fourteenth Amendment's Due Process Clause for individuals who are incapacitated, but not being "punished" by that incapacitation, such as pretrial detainees.  *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000); *see also Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996).  In order to plead a violation of this standard, two factors must be satisfied.  *Farmer v. Brennan*, 511 F.3d 825, 832-33 (1994)*.*  First, the deprivation alleged must be "sufficiently

serious," which for an allegation of a failure to prevent harm requires the inmate to demonstrate that they are incarcerated under conditions posing a substantial risk of serious harm. *Helling v. McKinney*, 509 U.S. 25, 33-4 (1993).  And, second, that the plaintiff show that the official demonstrated a "deliberate indifference" to an inmate's safety.  *Farmer*, 511 U.S. at 834. Deliberate indifference is a "stringent standard of fault," *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997), and "[a] showing of simple or even heightened negligence will not suffice," *Brown*, 520 U.S. at 407. In order for a plaintiff to establish deliberate indifference, "it is enough [to show] that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842.

Plaintiff's amended complaint alleges he was "with seninor [sic] taylor" when a "patient" "[b]eat up in my Back."  Dkt. No. 14 at 4.  Beyond mentioning Taylor's presence, this description does not allege any deliberate indifference by Taylor; there is no allegation Taylor allowed this assault to occur or participated in any way.  Plaintiff describes an incident in which another patient "jerking off" near him while he was sleeping two times and that he reported it to "mr. SHTA," and a second incident where another patient came inside the shower with him and "senior" knew about it.  Plaintiff does not describe Taylor's response to his reports of this incident, and therefore fails to establish that Taylor demonstrated the deliberate indifference necessary to adequately plead a constitutional violation.

## C.   Dismissal Without Prejudice

Defendants have requested that the Court dismiss Plaintiff's complaint with prejudice, on the ground that an opportunity to replead would be "futile." Dkt. No. 34 at 13.  Dismissal with prejudice is not warranted here.  "[D]istrict judges should, as a general matter, liberally permit pro se litigants to amend their pleadings."  *Terry v. Inc. Vill. of Patchogue*, 826 F.3d 631, 633

(2d Cir. 2016).  Plaintiff is proceeding pro se, and, while this complaint does repeat some of the allegations already addressed in 19-CV-6072, Plaintiff has not yet had the benefit of a decision of the Court explaining the pleading standards necessary for several of his claims to survive a motion to dismiss.  Accordingly, the Court grants Plaintiff leave to amend his complaint in accordance with the requirements set forth in this opinion.

## CONCLUSION

For the foregoing reasons, Plaintiff's complaint is dismissed.  This dismissal is without prejudice to Plaintiff filing an amended complaint in response to the Court's opinion within 90 days of the date of this opinion.  The Clerk of Court is respectfully directed to mail a copy of this opinion to the Plaintiff.  The Clerk of Court is respectfully directed to close the motion at Dkt. No. 33.


SO ORDERED.

Dated: September 28, 2021
     New York, New York                                 LEWIS J. LIMAN
                                          United States District Judge